May it please the court. Just a minute, your co-counsel is still coming in here. I was very excited. Very well. Please proceed. Good morning, Your Honors. May it please the court. My name is Ina Lipkin. I'm representing the petitioner, Mr. Singh. Pursuant to the court's recent order, we're here to discuss the applicability of Singh v. Whitaker regarding the relocation issue. Petitioner contends that the IJ and then the board failed to properly consider the feasibility of relocation. Under the board's decision of MZMR, the board failed to properly apply that two-prong test regarding whether Mr. Singh can relocate and, most importantly, whether it would be reasonable. Now, the board found that absent the IJ's explicit credibility finding, he must be found credible. And his credible testimony established that following five illegal arrests and vicious beatings due to an imputed separatist ideology that the police believed he had, it is not reasonable nor feasible for him to relocate outside of the Punjab. Let's trace this back a little bit. I actually wrote the Singh opinion, so I'm very familiar with it. And there are certain things that the IJ or the BIA has to do. But before we get to that, I want you to know in terms of background, this is, at least in my experience, at least the tenth case that I've had where somebody named Singh has virtually identical claims, virtually identical. And I think the IJ has those same kinds of issues. So the credibility thing we'll put to a side for a moment. But let's talk about relocation. In this case, for example, Mr. Singh, he didn't testify that his persecution involved the Congress Party. So is there any need to even consider what role the Congress Party might play in terms of any relocation? I think because his claim focused on harm administered by the police, no, I don't think that we have to. Okay. So we're focused on the police and who else? Conceivably, the BJP party, which is the ruling national party, could be a factor that would inform his persecution because if he continued with separatist activities, such as speaking out against government impunity, which he had done in the past, then it is conceivable that the centralized ruling party, the BJP, could instruct the police force to locate him. True, it could. But in terms of what he said, as I understand it, correct me if I'm wrong, your client is a very low-ranking man party person, no big cheese guy. That's right. Nobody knows him. He's just a regular guy. Yes. And he claims the police beat him up and he claims that these people came by and beat him up on the way back from a soccer game or whatever. But the reality is, in terms of relocation, you get outside the Poon job, the question is, is it a reasonable determination by the IJBIA that he could be safely relocated? I'm struggling with what he said that makes their determination inappropriate. What specifically, what harm did he allege was going to happen? Who was going to cause it if he was relocated? He claims that on five occasions after he participated in pro-mon activities, the police arrested and beat him. In the Poon job. In the Poon job. Right. He's claiming that if he relocated outside the Poon job, on the one hand, he would be curtailed from freely expressing or participating in pro-mon or political activities. And what evidence did he have of that? It's not in a country report. Well, I think there's something in the DOS report that was taken administrative notice of by the judge. The fact that the Mon party principally operates in the Poon job. So if he had to relocate outside the Poon job, he'd be deprived of the opportunity to have a political voice and to participate in cessationist activities. Secondly, and he did testify to this, he believes he is on a list of chronic offenders. This was discussed in the brief. Do you have any evidence that he used to back that up? Well, they did take his name and fingerprints. Everybody gets that when the police picks them up, right? I mean, Your Honor, you've seen so many cases in my 20 years I have as well. It's not always the case that the applicant claims that their fingerprints were taken. But in this case, they were. And therefore, he has perhaps a stronger claim than someone else by stating that or by alleging that should he try to rent lodgings or get a job, according to tenant landlord registration schemes throughout India, that that information could be relayed back to the local authorities, and then some sort of process would start to locate him. If I just may say, that is all buttressed, the continued interest in him, by the more recent beating and death of his mother in May 2013, in which he claimed that the police harassed her in an effort to locate him. Since there was no adverse credibility finding, we've got to take that testimony and give it full weight. Again, that's a similar allegation that's made in a whole bunch of these. Mother's almost always killed, almost always beaten up. But in terms of credibility, let's assume for a moment that's correct. How long ago did he leave India? I mean, it's been about six years or if not more. Six years, okay. And his mother was killed about that time? Correct. So in this case, is there anything that happened in the six years that she was passed away? Well, Your Honor, even if something happened, he did claim that he feared that his wife, who remains there, would also face similar harm. She's not been contacted, though, right? Well, we don't have a motion to reopen based on such evidence, but that's not to say it did not happen. The Court can only look at the facts as they were presented before the Court. But they have to be facts that are buttressed with some testimony. What I'm getting from the claim here is there's a lot of supposition. This could happen, that could happen, this could happen. But I'm not seeing solid evidence that there are other people similarly situated who have had problems in his type situation if he is relocated elsewhere in India. But, Your Honor, isn't the case law, doesn't it require the Court to engage in some supposition? Is it reasonable for him to relocate? Not supposition. It has to explain its reasoning. Right. Well, back to the Court's decisions this year, of which there were quite a few, the Petitioner argues that, in this case, the Board failed to consider whether his active membership in the Mon party would expose him to harm. And if he returned to India, he's claiming he would try to actively participate, and that's the basis of any future interest in the police testimony, those efforts. I might save my remaining minutes. You can. You can do that. Good morning. Good morning, Your Honors. May it please the Court, Andrew Nsinga, on behalf of the Attorney General. The immigration judge found Petitioner could avoid harm from the Punjabi police, other police, and national authorities by internally relocating. That analysis is both adequate under Narendra Singh, and it's supported by substantial evidence in this record. If I could turn for a moment for the substantial evidence issue, part of the difficulty here is Petitioner can't even decide what kind of claim he has before this Court. His brief says clearly Petitioner was not a Sikh separatist, but now comes to the argument before the Court and says he is a Sikh separatist. I'm going to be curtailed in my activities. What this Court needs in argument is cite to the record if these accusations are going to be made. If the claim is that he is a Sikh separatist, then we need citations to the record to where he is indeed a Sikh separatist. So with that in mind, returning to Judge Smith's questions about supposition and where is this evidence, what is the evidence here? He's a low-level person. He's agreed with that. He's a low-level person. He's not of great national interest. The immigration judge said he identified the immigration judge identified the issues. That on AR-71, the immigration judge said, look, I find that he can avoid Punjabi police and other police, and also the national authorities. These, of course, are the pertinent actors in the situation. He was beaten five times in Punjabi police, and the U.K. Country Note, the Law Library of Congress report, the State Department report, all these reports indicate that the Petitioner can internally relocate and be safe and practice his religion as long as he just sort of continues his life as normal. The reports reflect multiple Sikh communities within India. And part of what we need to keep in mind, too, is India is a country of 1.2 billion people, and the country reports clearly state that it's 28 states, seven territories, with a high degree of autonomy from the national government. Let me ask you this, Counsel. Your opposing counsel makes the argument that the Petitioner here would be deprived of the ability to continue to advocate separatist ideology. What's your response to that, if he were outside of the Punjab? Well, this sounds like he's trying to pick up on a strand from Narendra Singh in which the Petitioner Narendra Singh made the allegation. The government's response is, where in the record does he discuss that? I can't identify it because I've not been seen in the argument where he alleges that. Again, the brief says on page 32 the Petitioner was not a Sikh separatist. Yeah, he supported the Man Party, but when the immigration judge looked at the evidence, the evidence showed that low-level Man Party officials or members, because he's not even an official, low-level Man Party people can avoid harm by continuing along their life in any of the 28 states, seven territories, with a high degree of autonomy. But we don't really need to even consider, from your perspective, the argument about future political activity in terms of separatism, because there was no allegation he was doing that in the first place. Is that correct? Correct, Your Honor. There's the Court no, go ahead, finish. The Court doesn't need to consider a factual claim for which there is no factual support. Okay. Unlike Judge Smith, I did not write Singh v. Whitaker. So help me with exactly what analysis is here that was not in Singh v. Whitaker. The analysis fully comports with requirements of Singh v. Whitaker. The, without putting words in Judge Smith's mouth, my understanding is that it requires that the immigration judge consider harm by other potential actors outside of just the Punjabi police. And so on AR-71, the immigration judge identifies that you can avoid harm by other police and the national government. So the immigration judge identifies the issue accurately. And so that's one thing. And then when we look at the actual evidence, the substantial evidence does support it in the sense of all these country reports saying Sikhs have multiple communities within these, this large country, this Federal democracy, and can relocate. So the immigration judge identified the issue accurately under Narendra Singh, the who else might harm you, and then conducted appropriate analysis. Unless the Court has any further questions. Kagan. So you're saying the BIA did conduct a reasoned analysis with respect to the Petitioner's individualized situation here? Correct. By identifying that the other possible actors here were, obviously, Narendra Singh, the agency focused on the Punjabi police. Here they identified Punjabi police and other police and the national government. Other questions by my colleagues? Thank you. We ask the Court to deny the petition. Okay. You have some rebuttal time, counsel, if you wish to use it. Your Honor, the government, I believe, with all due respect, is conflating the Petitioner's position and arguments. He is not necessarily claiming that he identifies as a Sikh separatist. He's claiming the police have imputed a political opinion onto him of being a Sikh separatist, and for that reason it is unsafe for him to relocate within India. If I understand your position correctly, he's saying that the Punjabi police did that. Correct. What about outside of the Punjab? Let us say he did relocate to one of the 26 states or seven territories of India and decided to continue with his pro-Maan support. But, again, your opposing counsel suggests that he didn't really claim he was much of an advocate even before, so are we to impute that he's going to do that in the future? Well, I would refute that, Your Honor. The record was pretty clear. The five times he was arrested, it was always after participating in pro-Maan activities. Some were to protest police impunities. Some were to advocate for pro-Sikh causes. But I understand what the administrative law judge specifically found. It was, first, that a Maan Party member not of interest to the central authorities is not targeted outside of the Punjab. So it doesn't matter. The administrative law judge was assuming that he would be, in some sense, continuing as a member of the Maan Party, but said unless he was at a much higher level, based on the country reports and other evidence, that would not be enough to create a likelihood of persecution. And he added that the Sikhs don't have to register with the police when they're relocated to another area. He made a number of specific findings, unlike the situation in the prior Singh case. So didn't he address all your fears? The Petitioner contends that the IJ misconstrued the background documents. For example, I think we argued this in the brief, the Canadian Refugee Board had conflicting comments from various experts regarding the feasibility of relocation. Some said that those perceived as Sikh separatists would be on the lists of likely people that would be targeted. A different expert said something else. So I think that this Court has to view that record with an open mind and find that the IJ may have viewed those reports in the most negative light and did so improperly because there was plenty of conflicting information in the report. What is the standard of review that we're supposed to consider? Substantial. So if one side has substantial evidence and the other side also has that and the ALJ weighs that, don't we have to defer to the ALJ's determination? Well, I think that since the topic is asylum and the risk of harm to the aliens, so great the Court doesn't want to make a mistake to send someone back to risk their life. And so, therefore, the evidence should be construed in the light most favorable. So what you're saying is that the standard is not substantial evidence, but whether we're personally concerned about your client's welfare if he were sent back. I would like you to be personally concerned. But no, obviously the substantial evidence standard. But when there's conflicting information in an official report, such as the Canadian Refugee Board report, then the Court should give weight to the respondent's credible testimony. Okay. Thank you. Thank you both for your argument. We appreciate it. The case just argued is submitted.
judges: Schroeder, M. Smith, Rakoff